CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
8/16/2019
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

SELINA PAYNE, individually and on behalf
of all others similarly situated,

        Plaintiff,

v.

ECHOHILL ENTERPRISES, INC.,

PETER LAWRENCE,

RIGHT AT HOME, LLC,

        Defendants.

Case No. 5:19-cv-00059

FLSA COLLECTIVE ACTION
DEMAND FOR JURY TRIAL

## COMPLAINT

Plaintiff Selina Payne, individually and on behalf of all others similarly situated, respectfully moves for judgment against Defendants ECHOHILL ENTERPRISES, INC., PETER LAWRENCE, and RIGHT AT HOME, LLC (individually or collectively, "Defendants") as follows:

**I.    SUMMARY OF ACTION**

1. This is a claim for unpaid overtime compensation and minimum wages in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA").

2. Plaintiff alleges Defendants violated and continue to violate the FLSA through their practices of A) not paying overtime compensation and B) not paying for travel time

1

between worksites.

3. Plaintiff, on behalf of herself and all similarly situated employees, seeks unpaid overtime and minimum wages, liquidated damages, and attorneys' fees and costs arising out of the Defendants' FLSA violations.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) in that the Plaintiff may bring this action in any appropriate United States District Court.

5. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 2(b) since the acts and omissions giving rise to this lawsuit have taken place in this division in the Western District of Virginia.

6. Defendant EchoHill Enterprises, Inc. is subject to personal jurisdiction in the Commonwealth of Virginia. EchoHill's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over EchoHill to comply with traditional notions of fair play and substantial justice.

7. Defendant Right at Home, LLC is subject to personal jurisdiction in the Commonwealth of Virginia. Right at Home's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Right at Home to comply with traditional notions of fair play and substantial justice.

## III. PARTIES

8. Payne is a resident of Virginia who was employed by Defendants as a Caregiver, also referred to as a home health aide. Plaintiff was an "employee" as defined in the FLSA.

9. Defendant Echohill Enterprises, Inc. is a Virginia corporation with its principal

office at 1844 Valley Avenue, Winchester, VA 22601. EchoHill does business as "Right at Home." EchoHill is an "employer" as defined by the FLSA.

10. Defendant Peter Lawrence is the owner of EchoHill Enterprises, Inc. At all times relevant, Lawrence had and has ultimate authority over corporate operations as well as the terms and conditions of Plaintiff's employment and the employment of similarly situated employees. Lawrence meets the definition of "employer" as defined by the FLSA.

11. Defendant Right at Home, LLC is a Delaware corporation with its principal office at 6464 Center Street, Suite 150, Omaha, NE 68106. Right at Home, LLC is an "employer" as defined by the FLSA.

12. Plaintiff is informed, believes, and thereon alleges that each Defendant's gross annual sales made or business done is $500,000.00 or greater. Each Defendant operates in interstate commerce by, among other things, buying and/or selling goods and transacting business in multiple states, and/or by having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce in multiple states.

### IV. JOINT EMPLOYER ALLEGATIONS

13. Defendants are in the business of providing in-home assistance to elderly and disabled individuals using Caregivers like Plaintiff. At all times relevant, Defendants were joint employers of Plaintiff and all similarly situated employees for purposes of the FLSA. Defendants share common ownership and/or management and share responsibility over employer functions such as payroll.

14. Upon information and belief, EchoHill Enterprises and Right at Home are closely related entities. They each do business using the name "Right at Home." Lawrence is the owner

of EchoHill Enterprises. Plaintiff does not currently have sufficient facts to determine the precise relationship between Defendants.

15. Defendants solicit clients and employees using the same website, www.rightathome.net. This website advertises 1844 Valley Avenue, Winchester, VA 22601 (EchoHill's principal office address) as the address for the Winchester, Virginia location of Right at Home, LLC.

16. Defendants use the same "Right at Home" logo.

17. Defendants paid Plaintiffs and other similarly situated employees using payroll software identifying "Right at Home" as the payor.

18. Defendants codetermine the essential conditions of the employment of Plaintiff and all similarly situated employees.

19. Upon information and belief, Defendants, formally and/or as a matter of practice, jointly determine, share, or allocate the power to direct, control, or supervise Plaintiff and all similarly situated employees, by direct or indirect means.

20. Upon information and belief, Defendants, formally and/or as a matter of practice, jointly determine, share, or allocate the power to, directly or indirectly, hire or fire the employees or modify the terms or conditions of their employment.

21. The relationship between Defendants as joint employers is long-standing, ongoing, and has a high degree of permanency.

22. Upon information and belief, through shared management or a direct or indirect ownership interest, one Defendant controls, is controlled by, or is under common control with the other Defendant.

23. The work of Plaintiff and other similarly situated employees includes work performed at clients' homes and in transit between clients' homes. The management of that work is performed on premises owned or controlled by one or more Defendants, independently or in connection with one another.

24. Defendants, formally and/or as a matter of practice, jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll, marketing and advertising, determining the terms and conditions of employment, providing and developing the business process and logistics to carry out the work, and providing software, equipment, and other materials necessary to complete the work.

25. Defendants shared control over the terms and conditions of the employment of Plaintiff and other similarly situated workers.

## V. FACTUAL ALLEGATIONS

26. From approximately July 2016 through April 21, 2019, Payne worked for Defendants in and around Virginia. During the entire period of her employment, Payne worked for Defendants as a Caregiver. The position is also referred to as a home health aide.

27. The job duties of the Caregiver position involve providing in-home assistance to Defendants' clients, who are typically elderly or disabled individuals. This in-home assistance involves doing housekeeping in the clients' homes, bathing and dressing the clients, providing companionship to the clients, and preparing meals for the clients.

28. Defendants paid and continue to pay all of their Caregivers including Payne on an hourly basis.

29. The regular hourly rates Defendants paid to their Caregivers including Payne

ranged from $10.00 per hour in 2016 to $12.50 in 2019.

30. Payne and Defendants' other Caregivers recorded their time worked each day using a computer and cell phone application called ClearCare. The Caregivers including Payne clocked in and clocked out using ClearCare. However, Defendants required their Caregivers including Payne to clock out before traveling from one client to another, so that the Caregivers were not compensated for this travel time.

31. Defendants regularly scheduled the Caregivers including Payne to work in excess of 40 hours per week.

32. Defendants' Caregivers including Payne regularly worked in excess of 40 hours per week.

33. Defendants knew or should have known their Caregivers including Payne were working in excess of 40 hours per week, because Defendants monitored the time the Caregivers worked each day through the ClearCare application and other means.

34. The employee time and pay records maintained by Defendants show that their Caregivers including Payne regularly work in excess of 40 hours per week.

35. Defendants' Caregivers including Payne were entitled to overtime compensation equal to one and a half times their regular rate of pay for all time worked in excess of 40 hours per week.

**A. Defendants' Policy of Not Paying Overtime Compensation**

36. Even though Payne and the other Caregivers regularly worked more than 40 hours in a week, Defendants routinely did not pay them overtime compensation. Instead, Defendants paid only straight time for hours worked in excess of 40 per week.

6

37. Defendants' pay records expressly show its practice of not paying overtime compensation to its Caregivers.

38. For example, for the two-workweek period of 10/1/2017 to 10/14/2017, Payne worked at least 96.50 hours. This is reflected on her pay stub. Payne therefore worked at least 16.5 overtime hours during this pay period. Defendants, however, paid only straight time and did not pay Payne any overtime compensation for the hours she worked in excess of 40 per week during this two-week period.

39. As an additional example of Defendants' practice of not paying overtime compensation to Caregivers, for the two-workweek period of 10/15/2017 to 10/28/2017, Payne worked at least 113.67 hours. This is reflected on her pay stub. Payne therefore worked at least 33.67 overtime hours during this pay period. Defendants, however, paid only straight time and did not pay Payne any overtime compensation for the hours she worked in excess of 40 per week during this two-week period.

40. As an additional example of Defendants' practice of not paying overtime compensation to Caregivers, for the two-workweek period of 1/7/2018 to 1/20/2018, Payne worked at least 96 hours. This is reflected on her pay stub. Payne therefore worked at least 16 overtime hours during this pay period. Defendants, however, paid only straight time and did not pay Payne any overtime compensation for the hours she worked in excess of 40 per week during this two-week period.

41. As an additional example of Defendants' practice of not paying overtime compensation to Caregivers, for the two-workweek period of 5/13/2018 to 5/26/2018, Payne worked at least 148.50 hours. This is reflected on her pay stub. Payne therefore worked at least

68.50 overtime hours during this pay period. Defendants, however, paid only straight time and did not pay Payne any overtime compensation for the hours she worked in excess of 40 per week during this two-week period.

42. As an additional example of Defendants' practice of not paying overtime compensation to Caregivers, for the two-workweek period of 10/14/2018 to 10/27/2018, Payne worked at least 109 hours. This is reflected on her pay stub. Payne therefore worked at least 29 overtime hours during this pay period. Defendants, however, paid only straight time and did not pay Payne any overtime compensation for the hours she worked in excess of 40 per week during this two-week period.

43. As an additional example of Defendants' practice of not paying overtime compensation to its Caregivers, for the two-workweek period of 1/6/2019 to 1/19/2019, Payne worked at least 120.13 hours. This is reflected on her pay stub. Payne therefore worked at least 40.13 overtime hours during this pay period. Defendants, however, paid only straight time and did not pay Payne any overtime compensation for the hours she worked in excess of 40 per week during this two-week period.

44. The above examples are not exhaustive. Defendants had a practice of regularly and routinely not paying overtime compensation to their Caregivers including Payne for time worked in excess of 40 hours per week.

45. Defendants' practice of not paying overtime compensation to its Caregivers is reflected in Defendants' time and pay records, including employee earnings statements and pay stubs.

46. Defendants suffered and/or permitted their Caregivers including Payne to work

more than 40 hours per week without overtime compensation.

47. Defendants knew or should have known that their practice of not paying Caregivers overtime compensation for time worked in excess of 40 hours per week violated the overtime provisions of the Fair Labor Standards Act.

**B.  Defendants' Policy of Not Paying for Travel Time Between Worksites**

48. In addition to the practice of not paying overtime compensation to Caregivers, Defendants also had a practice of not paying Payne and other Caregivers for the time they spent traveling between clients' homes (worksites) during the workday.

49. Specifically, when Defendants required Payne and the other Caregivers to travel between worksites during the workday, Defendants required the Caregivers to clock out when leaving the first client's home, travel to the second client's home off the clock, and clock back in upon arriving at the second client's home.

50. Through this policy of requiring employees to travel between worksites off the clock, Defendants did not pay Caregivers anything for the time they spent traveling between worksites.

51. Defendants' off-the-clock travel policy resulted in the Caregivers including Payne not being paid minimum wage (or any wage) for their travel time between worksites.

52. In addition, Defendants' off-the-clock travel policy resulted in the Caregivers including Payne not receiving overtime compensation for their travel time in weeks when they worked in excess of 40 hours.

53. Defendants' off-the-clock travel policy, and the amount of wages for compensable time taken from each employee through this policy, is reflected in Defendants' time

9

keeping and payroll software. Specifically, each Caregiver's travel time for which they were not compensated can be determined by comparing the time they clocked out upon leaving the first client's home with the time they clocked in at the second client's home, and so on.

54. Defendants suffered and/or permitted their Caregivers including Payne to work without being paid minimum wages or overtime wages when they were required to travel between worksites.

55. Defendants knew or should have known that their practice of not paying Caregivers for travel time between worksites violated the minimum wage and overtime provisions of the Fair Labor Standards Act.

**C.     Additional Allegations**

56. Defendants' Caregivers including Payne were not employed in any bona fide executive, administrative, or professional capacity.

57. Based on the nature of Caregivers' job duties and hourly pay, there is no FLSA exemption that applies to preclude them from being paid one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

58. Based on the nature of Caregivers' job duties and hourly pay, there is no FLSA exemption that applies to preclude them from being paid minimum wage

59. Defendants willfully violated the FLSA by not paying their Caregivers overtime compensation.

60. Defendants willfully violated the FLSA by not paying their Caregivers minimum wage or overtime compensation for time spent traveling between worksites

61. At all relevant times Defendants intended to deprive their Caregivers including

Payne of the overtime pay and/or minimum wages to which they were entitled to under the FLSA, or acted with reckless disregard for their rights under the FLSA.

VI. **COLLECTIVE ACTION ALLEGATIONS**

62. Plaintiff files this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as a Representative Plaintiff.

63. Upon information and belief, Defendants employ, and have employed, multiple persons who were paid under a similar pay scheme which deprived employees of overtime pay for time they worked in excess of 40 hours each week.

64. Upon information and belief, these employees perform, and have performed, work which entitles them to payment of overtime compensation which they have not received.

65. Defendants' own time and pay records, and Plaintiff's conversations with Defendants' managers, demonstrate Defendants' policy of not paying overtime compensation.

66. Defendants' own time and pay records, and Plaintiffs' conversations with Defendants' managers, demonstrate Defendants' policy of not paying for travel time between worksites.

67. Upon information and belief, Defendants compensated, and continue to compensate, those similarly situated to Plaintiff on a uniform compensation basis common to Plaintiff and other persons performing similar job functions.

68. Upon information and belief, Defendants' pay operations are centrally managed as a single enterprise, and all or most of Defendants' employees who are paid similarly to Plaintiff are subject to common time-keeping and payroll practices.

69. The FLSA "collective" or "class" of similarly situated employees is composed of

all present and former employees of Defendants who were paid under a pay scheme similar to Plaintiff, and have been employed within three (3) years of the date of filing of this action.

70. Defendants' policy of not paying overtime compensation amounted to a willful or reckless disregard of their employees' rights under the FLSA.

71. Defendants had no good faith basis to believe that not paying overtime compensation was somehow allowable under the FLSA.

72. Defendants' policy of not paying for travel time between worksites amounted to a willful or reckless disregard of its employees' rights under the FLSA.

73. Defendants had no good faith basis to believe that not paying for travel time between worksites was somehow allowable under the FLSA.

74. Plaintiff asserts that Defendants' willful disregard of the overtime and minimum wage laws described herein entitles Plaintiff and similarly situated employees to the application of the three (3) year limitations period.

75. Plaintiff's job duties, and the job duties or those similarly situated to Plaintiff, are not exempt from the coverage of the FLSA.

76. At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

### VII. CLAIMS

**COUNT I: VIOLATIONS OF FAIR LABOR STANDARDS ACT**
**(Overtime Violations)**

77. Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

78. At all times relevant herein, each Defendant has been, and continues to be, an "employer," and Plaintiff and each similarly situated employee has been, or continues to be, an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

79. The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours per week. 29 U.S.C. § 207. As such, Plaintiff and all similarly situated employees are entitled to overtime compensation at one and one-half times their regular rate of pay for work performed in excess of forty hours per week.

80. By failing to compensate Plaintiff and similarly situated employees with overtime compensation for their overtime hours worked, Defendants have violated, and continue to violate the FLSA.

81. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

82. Plaintiff seeks damages for herself and all others similarly situated in the amount of unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

**COUNT II: VIOLATIONS OF FAIR LABOR STANDARDS ACT**
**(Minimum Wage Violations)**

83. Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

84. At all times relevant herein, each Defendant has been, and continues to be, an

"employer," and Plaintiff and each similarly situated employee has been, or continues to be, an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

85. The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees at a minimum wage rate of not less than $7.25 per hour. 29 U.S.C. § 206. As such, Plaintiff and all similarly situated employees are entitled to a minimum wage of $7.25 per hour for all work performed, including travel time between worksites.

86. By failing to compensate Plaintiff and similarly situated employees with at least minimum wages for all time worked, including travel time between worksites, Defendants have violated, and continue to violate the FLSA.

87. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

88. Plaintiff seeks damages for herself and all other similarly situated in the amount of unpaid minimum wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests the following relief against Defendants:

A. Certifying this case as a collective action;

B. Judgment that Plaintiff and all similarly situated employees were non-exempt employees entitled to protection under the FLSA;

C.  Judgment against Defendants for violations of the overtime and minimum wage provisions of the FLSA;

D.  Judgment that Defendants' violations as described above were willful;

E.  Money damages for all unpaid overtime and minimum wage compensation;

F.  Liquidated damages in an amount equal to all unpaid overtime and minimum wages owed to Plaintiff and all others similarly situated;

G.  Pre-judgment and post-judgment interest;

H.  Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

I.  Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the FLSA;

J.  Any and all further relief permissible by law,

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all claims and issues so triable.

Respectfully submitted,

SELINA PAYNE,
individually and on behalf of all others similarly situated,
By Counsel

Dated:      August 16, 2019

/s/Timothy Coffield
Timothy Coffield (VSB 83430)

COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
P: (434) 218-3133
F: (434) 321-1636
tc@coffieldlaw.com

Craig Juraj Curwood (VSB No. 43975)
CURWOOD LAW FIRM
530 E. Main Street, Suite 710
Richmond, VA 23219
Telephone: (804) 788-0808
Fax: (804) 767-6777
ccurwood@curwoodlaw.com

Counsel for Plaintiff

# CERTIFICATE

I HEREBY CERTIFY that a true and correct copy of the foregoing Complaint will be delivered to a qualified process server with instructions to serve the same upon the Defendants or their authorized agents at the following addresses, or any other addresses where Defendants may be found:

ECHOHILL ENTERPRISES, INC.,
SERVE:   Peter Lawrence, Registered Agent
         1844 Valley Avenue
         Winchester, VA 22601
         (alternate address)
         110 N Cameron St
         Winchester, VA 22601

PETER LAWRENCE
SERVE:   Peter Lawrence, Registered Agent
         1844 Valley Avenue
         Winchester, VA 22601
         (alternate address)
         110 N Cameron St
         Winchester, VA 22601

RIGHT AT HOME, LLC
SERVE:   John W. Herdzina, Registered Agent
         Suite 300
         8712 West Dodge Road
         Omaha, NE 68114

/s/Timothy Coffield
Counsel for Plaintiff